UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-24180 CIV- KING
MAGISTRATE JUDGE : MCALILEY

MARIA BARQUIN; NATASHA WATSON;
JESSICA OLIVER; LUCIANA LOCOBARA ;
JASMINE TELSIE; and NATALIA PENA-MONSIEVHAN
Plaintiffs
vs.
MONTY'S SUNSET, LLC..
Defendant

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Monty's Sunset, L.L.C., ("Monty's Sunset" or "Defendant") moves for summary judgment on all Plaintiffs' claims. Fed. R. Civ. P. 56 and Local Rule 7.5.

There exists no genuine dispute of material fact and Defendant is entitled to judgment as a matter of law. The claims raised in Counts I and II of the Complaint lack legal and factual support and accordingly must be dismissed.

**WHEREFORE** Defendant respectfully requests that this Motion for Summary Judgment be GRANTED and Judgment be entered for Defendant.

**MEMORANDUM OF LAW**

**I INTRODUCTION**

This is an action arising under the anti-retaliation provisions of the Fair Labor Standards Act ( the "FLSA"), 29 U.S.C. § 215(a)(3). Plaintiffs do **not** allege Defendant failed to pay them minimum wage or overtime compensation pursuant to the FLSA, but do allege they were retaliated against for asserting such rights. Complaint ¶ 12.

For Plaintiffs to prevail on their FLSA retaliation claim they must prove:

(1) they each engaged in a protected activity under the FLSA;

(2) they each subsequently suffered adverse action by the employer; and

(3) a causal connection existed between the protected activity and the adverse action.

Wolf v. Coca-Cola, 200 F.2d 1337, 1342-1343 (11th Cir. 2000).

Count II of the Complaint raises a state law claim Defendant interfered with Plaintiffs' business relationship with Defendant's customers. Complaint ¶ 12 (second ¶12).

**II FACTS**

Defendant is the owner of the Monty's restaurant located on Miami Beach, Fl.. It acquired that restaurant on September 23, 2011, from a completely unrelated entity. Affidavit of Tricia Johnson ("Johnson Aff.") Exhibit 4 ¶ 4. Prior to acquiring Monty's, as part of their due diligence process, the owners of Monty's Sunset reviewed the business operations of the restaurant, including the method by which employees were paid. Johnson Aff. ¶ 5-6.

At a meeting held at the restaurant on September 23, 2011, Plaintiffs (other than Plaintiff Pena-Monsievich) were offered a position with Defendant upon the same terms as they benefited from with the prior owners. Affidavit of Laurie Powell ("Powell Aff.") Exhibit 3 ¶ 18-21. At that meeting Ms. Powell, the General Manager of Monty's for the prior owners, provided the Monty's Sunset Employee Handbook ("Monty's Handbook") to Plaintiffs. Id.; Affidavit of Amanda Diaz (the "Diaz Aff.") Exhibit 8 hereto ¶ 23. Plaintiffs were required to and did sign a "Receipt and Acknowledgment Of Employee Handbook", stating "I received and will read my copy of Monty's Employee Handbook." Exhibit A to Powell Aff..

Monty's Sunset continued the way RMI paid Plaintiffs by paying them 18% of their net sales, subject to enumerated deductions, with a wage guaranty of $11.51 per hour. Powell Aff. ¶ 18; Johnson Aff. ¶ 19. The wage guaranty is set forth in the Monty's Handbook, at p. 5: "All front of the house employees are guaranteed $11.51 per hour, for each hour worked, regardless

of hours worked … ”. Exhibit B to Powell Aff..

Defendant prominently displayed the required Fair Labor Standards Act Poster in its kitchen area. That Poster indicated the Federal Minimum Wage was $7.25. Johnson Aff. ¶ 15; Affidavit of James Recio (the Recio Aff.”) Exhibit 5 hereto ¶ 18; Cabrera Aff. ¶ 17.

If a Plaintiff earned less than $11.51 per hour for a week, Defendant paid them an additional amount to assure they earned not less than the guaranteed amount. Powell Aff. ¶ 12; Recio Aff. ¶ 48 & 52. Plaintiffs Watson and Telsie were in fact paid additional amounts to bring their weekly pay up to the $11.51 wage guaranty. Exhibit C to Johnson Aff. at p. 33(Telsie 2/10/12 check) and p. 40 (Watson 11/4/11 check).

An 18% Service Charge was added to all checks. Plaintiffs were required to disclose this to customers. The Monty's Handbook, Exhibit B to Powell Aff., at p. 6 stated:

> An automatic 18% Service Charge is included in each check, with the exception of "To Go" orders which is automatic 10%. You are not allowed to add an extra service charge to the check or tell the guest that the service charge is not included.

On December 28, 2011, Monty's Sunset changed the way credit card receipts were prepared. Guest checks contained a line item for the 18% Service Charge, the credit card receipt did not. This led to customer complaints of mistaken and excessive tips for Servers. Managers were spending too much time dealing with these unhappy customers and chargebacks. To address this problem a new system (Aloha system) was installed to prepare credit card receipts. Those receipts were changed to contain a line item specifically highlighting the 18% Service Charge. Once this was done the number of customer complaints was significantly reduced. Johnson Aff. ¶ 27-32; Recio Aff. ¶ 13; Cabrera Aff. ¶ 8. Exhibit "A" to Johnson Aff. shows the change in credit card receipts.

Another change was a reduction in the percentage of net sales paid to Servers. Prior to

December 28, 2011, 3.7 % of sales were paid to Food Runners and Bussers, after December 28, 5.0% of net sales were paid to them. Cabrera Aff. ¶ 8-10 ; Recio Aff. ¶ 19-21. This change led to numerous complaints by Plaintiffs that they were not earning enough money. Id.

Plaintiffs were unhappy with these changes. Recio Aff. ¶ 13-16. They complained their tips were reduced by the additional disclosure on the receipt, and they were making less money. Plaintiffs unhappiness severely affected their attitude and work performance. Id.

Defendant's time recording system Plaintiffs to log on prior to beginning work and log off when they stopped working. Plaintiffs time was calculated to the minute. Exhibit B to Johnson Aff. (time records); Johnson Aff. ¶ 40; Recio Aff. ¶ 64; Diaz Aff. ¶ 36. No Plaintiff complained about the accuracy of the time records or in any way suggested they worked more hours than were recorded. Johnson Aff. ¶ 42; Recio Aff. ¶ 63; Diaz Aff. ¶ 37.

During September 2011 Managers evaluated employees, new employees were being hired, and personnel needs and scheduling matters were reviewed. Mr. Recio began preparing work schedules for employees. Recio Aff. ¶ 38-41. Mr. Recio sought input from Ms. Diaz in determining the number of shifts to give employees due to her prior service with RMI and her familiarity with the abilities of Plaintiffs. Recio Aff. ¶ 44. Through consultation with Ms. Diaz regarding Plaintiff Locobara, he was provided mixed reviews and decided to limit the number of shifts assigned to her to personally assess her capabilities. Recio Aff. ¶ 40.

Plaintiff Locobara was unhappy with her shifts and verbally complained to Managers. Diaz Aff. ¶ 33. Her complaints were she was not making enough money and she needed to make more money. Recio Aff. ¶ 42; Diaz Aff. ¶ 30. In response to being told they were not sure if she would get more shifts, Plaintiff Locobara responded - don't bother- and she never came back to work. Recio Aff. ¶ 43-44.

Defendant considered an employee who was a NCNS (no call no show) as having abandoned their job. Johnson Aff. ¶ 20; Recio Aff. ¶ 28; Diaz Aff. ¶ 42; Cabrera Aff. ¶ 32. That longstanding policy is set forth in the Monty's Raw Bar Rules, Policies, Menu Specs, Exhibit C to Powell Aff., where at p. 2 in bold capital lettering it states: "**IF YOU ARE ABSENT FROM A SHIFT WITHOUT NOTICE YOU WILL HAVE BEEN CONSIDERED TO HAVE RESIGNED.**" Consistent with this established NCNS policy, Defendant terminated 16 employees. Johnson Aff. ¶ 21; Recio Aff. ¶ 30. Of the 16 employees terminated for NCNS, 7 had no prior disciplinary action of any kind. Id.

Plaintiff Watson was terminated for NCNS. Superbowl Sunday is an extremely busy day at Monty's. Affidavit of Irina Zevallos (the Zevallos Aff.") Exhibit 7 hereto ¶ 19; Diaz Aff. ¶ 53; Cabrera Aff. ¶ 35. Plaintiff Watson was scheduled to work Superbowl Sunday, was notified in advance of that shift, and was aware she was on the schedule. Zevallos Aff. ¶ 19; Cabrera Aff. ¶ 35-38. Several days after she saw she was on the schedule she asked Ms. Zevallos to be removed from the schedule. Zevallos Aff. ¶ 19. Ms. Zevallos refused explaining all employees (with one exception) were scheduled that day. Id. Instead of working as scheduled on Superbowl Sunday, she went to the Circus with her Boyfriend. Id.; Cabrera Aff. ¶ 38. Plaintiff Watson was considered to have abandoned her job for failure to appear for a scheduled shift. Id.

Managers informed ownership of the employee complaints, that many employees had poor attitudes, and customer service was being negatively affected. Recio Aff. ¶ 35; Johnson Aff. ¶ 37; Cabrera Aff. ¶ 22. Managers were told the amount or method by which employees were paid was not going to change and to make that clear to employees. Johnson Aff. ¶ 39; Cabrera Aff. ¶ 23. Managers were instructed to counsel employees with poor attitudes , and if an employee could not accept that they should be asked to leave. Id.

Mr. Cabrera and Ms. Zevallos met with Plaintiff Barquin. Zevallos Aff. ¶ 10; Cabrera Aff. ¶ 24. At that meeting they discussed her complaints and unhappiness, and she reiterated her concern she was not making enough money, and the credit card fees. She also did not like being on call for a second shift if needed. She made it clear she would not accept these changes and her attitude would not improve. Zevallos Aff. ¶ 11-13; Cabrera Aff. ¶ 25-26 . It was apparent that it was impossible for Ms. Barquin to be happy in her job and it was best for all concerned for her to find a job elsewhere where she could be happier. Zevallos Aff. ¶ 13; Cabrera Aff. ¶ 26.

Mr. Cabrera and Ms. Zevallos met with Plaintiff Telsie to discuss her poor attitude and performance. Zevallos Aff. ¶ 14; Cabrera Aff. ¶27. At that meeting she stated her complaints and unhappiness, emphasizing she did not think she was earning enough money and was upset about not being allowed to leave early if it was slow. Zevallos Aff. ¶ 15; Cabrera Aff. ¶ 28. After listening to Ms. Telsie, Mr. Cabrera explained the things that concerned her were not going to change, and that the owners had given these matters considerable thought and decided that this is how they wish to run their business. Ms. Telsie refused to accept the owners had the right to change things whether she liked it or not, and said she could not continue to work for this money. Id. It was apparent it was impossible for Ms. Telsie to make the money she said she had to make. Mr. Cabrera concluded it was best for all concerned for her to find a job elsewhere where she could make the money she said she had to make. Zevallos Aff. ¶ 15; Cabrera Aff. ¶30.

In Plaintiff's Interrogatory Responses, Exhibit 2 hereto, to Interrogatory No. 5 relating to the complaints they made and the retaliation they allege, Plaintiffs each responded as follows:

**Plaintiff Barquin -** complained to Martin Cabrera (General Manager) "... about the high credit card fees and high tip outs.", to Amanda Diaz (Manager) "...various servers complained to her about high credit card fees.", to Nina Zevallos (Manager) "... I complained to her about the high

credit card fees and high tip outs.", and to Christian (Manager) and Steve Neibler (Manager) " I complained to him about the high credit card fees and high tip outs.". **Plaintiff Locobara** - complained to Michelle (manager), Amanda (manager), and James (manager) "... about the high credit card fees." **Plaintiff Watson-** complained to Martin Cabrera (General manager) and Nina Zevallos (Manager) "... about the high credit card fees and about the manner in which I was paid.", to Amanda Diaz (Manager) "... about not being properly paid.", to Nina Zevallos (Manager) "... high credit card fees and about the manner in which I was paid.", to Christian (Manager) and to Steve Kneapler (Manager) "... about the high credit card fees and high tip outs.". **Plaintiff Telsie-** complained to Martin Cabrera (General manager), Michelle (Manager), Amanda Diaz (Manager), Tim (Manager), James (Manager) "about the high credit card fees tips, high tip outs, and the manner in which I was compensated." **Plaintiff Pena-Monsievich-** complained to Martin Cabrera (General manager), Michelle (Manager), Sean (Manager), Christo (General Manager) " … about being improperly paid.".

None of Plaintiffs concerns or complaints related to them earning less than $11.51 per hour or not being paid overtime. Id. Rather, all complaints related to their not making as much money as they thought they should be or that they believed they had in the past.

## III STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact" and judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing, by reference to materials on record, that there are no genuine issues of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 320, 106 S. Ct. 2548, 2551 (1986). A moving party satisfies this burden by exposing an absence of evidence to

support the non moving party's case. Celotex, 477 U.S. at 325. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). A "genuine" dispute as to a material fact only exists "if the evidence is such that a reasonable jury could return a verdict for the non moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

## IV FLSA PROTECTED ACTIVITY

The FLSA, 29 U.S.C. § 215(a)(3), defines protected activity as:

> to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted any proceeding **under or related to this chapter**… .{emphasis supplied}

The Supreme Court has recently provided guidance in determining if a verbal complaint is sufficient to constitute a protected activity under the FLSA. Kasten v. Saint Gobain Performance Plastics Corp., 131 S. Ct. 1325,1334, 179 L. Ed. 2D 379 (2011). In Kastin, the Supreme Court described that which is necessary for a FLSA complaint of retaliation, holding:

> … the phrase "filed any complaint" contemplates some degree of formality,certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns. Id.
>
> [t]o fall within the scope of the anti retaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both the content and context, **as an assertion of rights protected by the statute** and a call for their protection. {emphasis supplied}. Id. at 1335.

The Supreme Court did not address whether the complaint must be made to a governmental or other entity. Plaintiffs filed no complaint with any governmental entity, their complaints were all verbal to their employer. Plaintiffs failure to file a complaint or grievance with a governmental or other entity renders their complaints not protected. Id.

General work grievances are not protected by the FLSA. It is insufficient for an employee to complain in a general manner about wages and tips under the FLSA. *See*, Lambert v. Ackerley, 180 F.3d 997, 1007 (9th Cir. 1999)("Not all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of §215(a)(3)"); Valerio v. Putnam Assoc., Inc., 173 F.3d 35, 43 (1st Cir. 1999)( "[t]here is a point at which an employee's concerns and comments are too generalized and informal to constitute 'complaints' that are 'filed' with an employer within the meaning of the [statute]…. "); Robinson v. Wal-Mart Stores, Inc., 341 F. Supp. 2d 759 (W.D. Mich. 2004)("[P]laintiff's expressions of concern or discomfort or frustration over her employer's wage and work hour reporting practices – even accepting her deposition testimony as true – do not amount to requisite adversarial assertion of statutory rights"); Brown v. Triton Sec., 5005 WL 2708914 (E.D. Va. 2005)("In lodging such complaints, Brown merely expressed his dissatisfaction with the terms of his employment-at-will status. Such complaints are not protected activity.")

Verbal complaints satisfying both the formality and specificity requirements of Kasten will constitute FLSA protected activity only if: (1) the employee must show that he **subjectively**, that is in good faith, believed that his employer was violating the law. Little v. United Techs. Carrier Transicold Div., 103 F. 3d 956, 960 (11th Cir. 1997) (decided under Title VII anti-retaliation provision), and (2) that he had an "**objectively reasonable** belief that his employer was engaged in unlawful practices." (Title VII). Padilla v. The North Broward Hosp. Dist., 270 Fed. Appx. 966 (11th Cir. 2008). [emphasis supplied].

**A. PLAINTIFFS COMPLAINTS WERE NOT PROTECTED ACTIVITY**

In determining whether Plaintiffs' verbal complaints are protected activity under the FLSA, the context of those complaints and their reasonableness "... in light of the facts and the record presented." must be considered. Little, 103 F. 3d at 960. When so considered, Plaintiffs'

complaints fall far short of "fair notice" a FLSA grievance has been lodged and lack the requisite clarity to put a reasonable employer on notice of a FLSA grievance. Kasten, 131 S. Ct. at 1334.

The specific complaints made by Plaintiffs in the context of the method and amount they were paid show they did not have the subjective good faith or the objective reasonableness required for their complaints to rise to the level of protected activity. Alvarado v. I.G.W.T. Delivery Systems, Inc., 401 F. Supp. 2d 1272, 1278 (S.D. Fl. 2006) (letters signed by plaintiffs requesting an increase in salary, reorganization of routes, cessation of discriminatory comments, and increased courtesy and respect insufficient to constitute protected activity); Burnette v. Northside Hospital, 342 F. Supp. 2d 1128 (N.D. Ga. 2004) (complaints about a change in on call policy resulting in the loss of on call pay insufficient to constitute protected activity), Perez v. Brandsmart Derv. Corp., 2011 U.S. Dist. Lexis 82708, 25 (S.D. Fl. 2011) (complaint that he would not work for free insufficient to constitute protected activity); Ash v. Sambodromo, 676 F. Supp. 2d 1360, 1372 (S.D. Fl. 2009) (protected activity not found where "[s]hortly after plaintiff complained to defendant about illegal tip deductions defendant retaliated against her by terminating her ..." as well as complaint of high credit card fees). Id.

One common thread in these cases is the plaintiffs never specifically mentioned the minimum wage or asserted rights under the FLSA. Ash, 676 F. Supp. 2d at 1374 ("... nowhere in the plaintiff's vague statements to management does the plaintiff assert her rights under the FLSA."). The same is true in this case.

Comparing the complaints Plaintiffs contend they made with those of Mr. Perez, Ms Ash, and Mr. Alvarado, it is apparent Plaintiffs' complaints fall far short of protected activity. The totality of the complaints each Plaintiff contends they made are set forth in their Response to Defendant's Interrogatory No. 5 (Exhibit 2 hereto), wherein they admit: **Plaintiff Barquin** : "...

about the high credit card fees and high tip outs.", **Plaintiff Locobara:** "... about the high credit card fees.". **Plaintiff Watson:** "... about the high credit card fees and about the manner in which I was paid.", "... about not being properly paid.", "about the high credit card fees and high tip outs.". **Plaintiff Telsie:** "about the high credit card fees tips, high tip outs, and the manner in which I was compensated.". **Plaintiff Pena-Monsievich:** " … about being improperly paid.".

Plaintiffs' litany of complaints are noteworthy for their complete absence of any reference to the FLSA, to the minimum wage or to overtime compensation. No reasonable interpretation of those complaints could lead one to conclude Plaintiffs were lodging or filing a grievance under the FLSA. See, Kasten, 131 S. Ct. at 1334. Verbally informing your employer that it is your opinion the credit card fees are too high is by no means the lodging or filing of a grievance under the FLSA. Verbally informing your employer that it is your opinion the tip outs were too high is by no means the lodging or filing of a grievance under the FLSA. Those very complaints are no different than those found not protected in Ash, 676 F. Supp. 2d at 1372-74.

The other complaints Plaintiffs Watson, Telsie and Pena-Monsievich state they made (not Plaintiffs Barquin or Locobara)- "the manner in which I was paid" and "not being properly paid" are simply to vague to constitute protected activity. Are these complaints they (i) were not making enough money? (ii) would rather be paid an hourly wage than a percentage of sales? (iii) would rather be paid a salary than a percentage of sales? (iv) would rather be paid a greater percentage of their sales? (v) would prefer to have the deductions from their net sales reduced? (vi) would rather have a higher guaranteed wage? (vii) were not paid the guaranteed wage? (viii) believe a mathematical error or miscalculation occurred in the calculation of their pay? (ix) some law other than the FLSA controls their pay and has been violated? Whatever these complaints may be, they do not "arise under or relate to" the FLSA. 29 U.S.C. § 215(a)(3).

**B. THE COMPLAINTS WERE NEITHER REASONABLE NOR IN GOOD FAITH**

The FLSA addresses only claims for minimum wage and overtime compensation, 29 U.S.C. § 206(a), 207(a), FLSA protected activity must therefore be limited to those specific rights (29 U.S.C. § 215(a)(3) "... under or related to this chapter **...**") . Plaintiffs recognize this at ¶12 of their Complaint, where they allege:

> Shortly before they were fired, Plaintiffs complained to the Employer that it was violating the **minimum wage and overtime provisions of the FLSA**. {emphasis supplied}

The Federal Minimum Wage was $7.25 per hour. 29 U.S.C. § 206(a). Plaintiffs were notified of this by the FLSA Poster prominently displayed in the restaurant's kitchen where schedules were posted. Johnson Aff. ¶ 15; Recio Aff. ¶ 18. Since Defendant guaranteed Plaintiffs not less than $11.51 per hour, Exhibit B to Powell Aff. (Monty's Handbook, p. 5), and actually paid Plaintiffs in excess of the guaranteed amount, Exhibit C to Johnson Aff., no employee could in good faith complain about not being paid the minimum wage in violation of the FLSA. Even if Plaintiffs made that complaint, which they admittedly did not, they could not have subjectively in good faith believed that such was the case. Perez, 2011 U.S. Dist. Lexis 82708, 25-26.

Not only could Plaintiffs not subjectively believe they were not paid the minimum wage, they could not objectively had a reasonable belief Defendant was not paying them the minimum wage. In resolving this issue it is presumed the employee has substantive knowledge of the law, i.e. the amount of the minimum wage. Little, 103 F.3d at 960. This Court must ask- How could Plaintiffs making a guaranteed minimum hourly pay of $11.51 reasonably believe they were making less than the $7.25 minimum wage?

This question is answered by Perez, 2011 U.S. Dist. Lexis 82708, 16, (the plaintiff was

paid on a commission basis, was guaranteed the minimum wage for all hours worked, and never worked overtime hours). Notwithstanding almost identical, but less compelling facts than those herein, Judge O'Sullivan enterred summary judgment for the defendant holding:

> … the plaintiff in the present case cannot satisfy the objectively reasonable requirement. **Even if the plaintiff did not know that BrandsMart guaranteed him minimum wage for all hours worked, it is an undisputed fact.** The applicable law allows commission payments to cover any hours spent for the benefit of the employer, regardless of how those hours are spent. **The FLSA does not prohibit an employer from changing or increasing job duties, hours or assignments, as long as the employee receives at least minimum wage for all compensable hours. The plaintiff's complaints were not objectively reasonable and thus, cannot constitute protected activity.** Id. at 30.{emphasis supplied}.

The unreasonableness of Plaintiffs belief finds additional support by the actual wage payments made to Plaintiffs. Exhibits B and C to the Johnson Aff.. Plaintiff Barquin earned at least $11.94 per hour or 164% of the minimum wage during her entire period of employment, with her average pay being $16.11 per hour or 222% of the minimum wage. Recio Aff. ¶ 46. Plaintiff Watson earned at least $11.51 per hour or 160% of the minimum wage during her entire period of employment, with her average pay being $17.45 per hour or 240% of the minimum wage. Recio Aff. ¶ 47. Plaintiff Telsie earned at least $11.51 per hour or 160% of the minimum wage during her entire period of employment, with her average pay being $17.37 per hour or 239% of the minimum wage. Recio Aff. ¶ 51. Plaintiff Locobara earned at least $14.83 per hour or 204% of the minimum wage during her entire period of employment, with her average pay being $17.84 per hour or 246% of the minimum wage. Recio Aff. ¶ 56. Plaintiff Pena-Monsievich earned not at least $14.89 per hour or 204% of the minimum wage during her entire

period of employment, with her average pay being $16.30 per hour or 224% of the minimum wage. Recio Aff. ¶ 60.

It is well known the FLSA requires overtime compensation for non-exempt employees who work in excess of forty (40) hours per work week. 29 U.S.C. § 207(a). Employees who are exempt, as Plaintiffs herein, need not be paid overtime compensation. 29 U.S.C. § 207(i).

Only Plaintiffs Barquin and Watson worked overtime. This was during only two weeks for Plaintiff Barquin and one week for Plaintiff Watson (.84 overtime hours). Exhibit B to Johnson Aff. (Barquin p. 9, 10, and 11, Watson p. 54). Because Plaintiffs (other than Barquin and Watson) never worked overtime they could not subjectively in good faith believe they were entitled to be paid overtime compensation. See, Perez, 2011 U.S. Dist. Lexis 82708, 26. Even if Plaintiffs did for some reason believe they should be paid overtime despite not working in excess of forty (40) hours in a work week, that belief could not have been objectively reasonable. It is presumed the employee has substantive knowledge of the law, i.e. that to be entitled to overtime they must work over forty hours in a work week. Little, 103 F.3d at 960.

This Court must ask- How could an employee working fewer than forty (40) hours per work week possibly believe they were entitled to overtime compensation? Cf., Harper v. Blockbuster Ent. Corp., 139 F. 3d 1385, 1388 n. 2 (11th Cir. 1998) (employees' belief that grooming policy violated Title VII was unreasonable given the overwhelming federal case law upholding such policies, and rejecting employees' argument that charging them with knowledge of case law was unfair: "If the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge."); Burnette v. Northside Hosp., 342 F. Supp. 2d 1128,1134-35 (N.D. Ga. 2004) ("... belief that Northside's conduct violated the FLSA was not reasonable, his complaint concerning

on call-pay was not protected activity.”). The answer is they can not.

The record is clear Plaintiffs Barquin and Watson never complained about overtime or even requested overtime. Exhibit 2. Complaining about not making enough money or high credit card fees is not filing a complaint or grievance under the FLSA for unpaid overtime pay.

Plaintiffs were exempt form the overtime provisions of the FLSA. 29 U.S.C. § 207(i) (commission employees who work for a retail or service establishment and whose commissions exceed 50% of their compensation are exempt if they earn at least 150% of the minimum wage). This exemption is the reason Plaintiffs were guaranteed 150% of the minimum wage, and is undoubtedly the reason there is no claim for the recovery of overtime compensation herein. Id.

Even if Plaintiffs Barquin and Watson did complain about not being paid overtime, which they did not, that would not be protected activity under the FLSA because they were exempt. A complaint of that nature would not be subjectively or objectively reasonable. Harper, 139 F. 3d at 1388 n. 2; Burnette, 342 F. Supp. 2d at 1134-35; Perez, 2011 U.S. Dist. Lexis 82708, 16.

It must be emphasized that no Plaintiff has even intimated they complained about working overtime and not being paid for those hours. Plaintiffs can not be retaliated against under the FLSA for a complaint they did not make.

**V IF PLAINTIFFS ENGAGED IN PROTECTED ACTIVITY, THERE IS NO CONNECTION BETWEEN THAT ACTIVITY AND THEIR TERMINATION**

Even assuming *arguendo* each Plaintiff engaged in a protected activity, they can not establish a causal connection between their alleged protected activity and their loss of employment. Plaintiffs Watson, Locobara and Pena-Monsievich were each treated as having resigned due to their NCNS (no call no show). Cabrera Aff. ¶ 36; Recio Aff. ¶44, 62; Zevallos Aff. ¶19. Considering an employee as resigning for NCNS was a well established policy of Defendant. Exhibit C to Powell Aff.; Johnson Aff. ¶ 20; Cabrera Aff. ¶ 32; Recio Aff. ¶ 28;

Zevallos Aff. ¶ 16-18. The reasons Plaintiffs stopped working for Defendant was their failure to appear for work when scheduled, not their vague, informal complaints. Id.

Defendant's NCNS policy is set forth in Exhibit C to the Powell Aff., at p. 2, wherein it states: "**IF YOU ARE ABSENT FROM A SHIFT WITHOUT NOTICE YOU WILL HAVE BEEN CONSIDERED TO HAVE RESIGNED.**" It was the policy, and it was enforced.

The failure of Plaintiffs Watson (to attend the Circus with her boyfriend), Locobara and Pena-Monsievich to appear for work is no different than Mr. Perez' refusing to perform assigned tasks. Perez, 2011 U.S. Dist. Lexis 82708, 25. In each instance such defiant activity cannot be considered "filing a complaint" within the meaning of the anti-retaliation provisions of the FLSA. While the grievance may be protected; insubordination is not. That distinction becomes crucial as to the issue of pretext, because the ultimate issue is whether the employer was motivated because of the filing of a complaint.

To meet their ultimate burden of proving retaliation Plaintiffs must show the adverse action would not have been taken "but for" their assertion of FLSA protected rights. Banegas v. One Two Tree, Inc., 2010 U.S. Dist. LEXIS 81994, at*14 (S.D. Fla. August 12, 2010) (citing Wolf , 200 F.3d at 1343 (citations omitted)). This means there must be admissible evidence from which a reasonable jury could find that "but for" Plaintiffs' complaints, they would remain in the employ of Defendant. In this instance Plaintiffs Watson, Locobara and Pena-Monsievich can not do so as there is no evidence to establish that had they appeared for work as scheduled they would not have continued to be employed by Defendant. Had they showed up, they had a job.

Plaintiffs Barquin and Telsie were terminated by Defendant as a result of their poor work attitude and performance. Cabrera Aff. ¶ 26, 30; Zevallos Aff. ¶ 16-18. They allowed their unhappiness to negatively affect their work and were counseled for that. Id.

Plaintiffs Barquin and Telsie refused to change their attitudes and improve their work. Id.

## VI PLAINTIFFS DID NOT HAVE A BUSINESS RELATIONSHIP WITH CUSTOMERS

In Count II of the Complaint Plaintiffs allege they had "advantageous business relationships with their customers." Complaint ¶ 12 (second ¶12), and Defendant interfered with that relationship resulting in their loss of "extra tips". Despite being factually incorrect, there is s simply no cause of action for this alleged wrong.

To prove their interference claim Plaintiffs must show: (i) the existence of a business relationship, (ii) knowledge of the relationship on the part of defendant, (iii) an intentional and unjustified interference with that relationship by defendant, and (iv) damage as a result of the breach of relationship. Gregg v. U.S. Indus., Inc., 887 F. 2d 1462, 1473 (11th Cir. 1989); Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994).

The guests of the restaurant were not Plaintiffs customers, they were Defendant's customers. Defendant owned and operated the restaurant to serve its customers. Defendant hired Plaintiffs to serve its customers subject to its direction and control. Plaintiffs, by doing their jobs, did not have a business relationship with any customer. Having no business relationship with Defendant's customers, Plaintiffs can not establish their claim. Id.

There can be no doubt a business relationship existed between Defendant and its customers. That business relationship precludes Plaintiffs claim of tortuous or other interference even if Plaintiffs did have a business relationship with Defendant's customers. Cox v. CSX Intermodial, Inc., 732 So. 2d 1092 (Fla. 1st DCA 1999); Romika-USA, Inc. v. HSBC Bank USA, N.A., 517 F. Supp. 2d 1334, 1338 (S.D. Fla. 2007). The "... interfering defendant must be a third party, a stranger to the business relationship."; Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F. 3d 1285, 1294 (11th Cir. 2001). Defendant is far from a "stranger" or "third party" with

respect to the customers of its restaurant.

The employment relationship between Plaintiffs and Defendant allowed Defendant to require Manager approval of credit card tips. Exhibit B to Powell Aff. at p. 6. The reason for that policy and the December 28, 2011, change to the Aloha system to disclose the Service Charge on the credit card receipt was customer complaints and charge backs. Customers would mistakenly or erroneously leave a large tip not realizing an 18% Service Charge was added to the check. Johnson Aff. ¶ 29-31; Recio Aff. ¶ 12-16. When the customer later realized this they would call to complain and want a refund. Id. To maintain good relations with its customers and to avoid instances of over tipping Defendant made appropriate and necessary changes. Id. Enforcement of its tipping policies and changes to credit card receipts were reasonable business decisions to protect Defendant's financial interests. Id.

By accepting employment under such terms and conditions Plaintiffs agreed to such policy. Defendant can not be precluded from enforcing a necessary and reasonable policy because its employees believe they are entitled to receive mistakenly large or erroneous tips from Defendant's customers. Defendant's express right to control the situation in which tips are given by Defendant's customers precludes any claim of interference. McCurdy v. J. C. Collis, 508 So. 2d 380, 384 (Fla. 1st DCA 1987). By enforcing its policy Defendant was protecting and safeguarding its financial relationship with its customers. Johnson Aff. ¶ 29-31; Recio Aff. ¶ 12-16. Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc., 162 F. 3d 1290, 1321 (11th Cir. 1998). As such, Defendant's actions were privileged. Id. at 1322.

Plaintiffs' contention Defendant interfered with their tips finds no factual support. In addition to the amount paid to Plaintiffs by Monty's Sunset, they were given tips by customers. Plaintiffs received both credit card tips and cash tips. Recio Aff. ¶ 10; Diaz Aff. ¶ 46; Zevallos

Aff. ¶ 20 . When a tip would be given to a Plaintiff they would keep that tip. Johnson Aff. ¶ 35; Recio Aff. ¶ 11; Diaz Aff. ¶ 46; Zevallos Aff. ¶ 21.

## VII CONCLUSION

For the reasons set forth herein Defendant's Motion must be Granted. Plaintiffs did not engage in any FLSA protected activity. Their complaints were not related to the FLSA and were nothing more than vague grievances about their not making enough money.

Plaintiffs could not have subjectively in good faith believed Defendant was violating the FLSA and certainly could not have had an objectively reasonable belief the FLSA was being violated. No reasonable employee acting in good faith would complain they were not being paid the $7.25 minimum wage when guaranteed a wage of not less than $11.51 per hour. No reasonable employee acting in good faith would complain they were not paid overtime if they worked fewer than 40 hours per week.

Plaintiffs were not terminated in retaliation for any complaints they made. Consistent with Defendants long standing policy of treating NCNS as resignations, Plaintiffs Watson, Locobara, and Pena-Monsievich resigned due to their failure to appear for a scheduled shift. This policy was consistently administered both before and after Defendant acquired the restaurant. There is simply no causation between any protected activity and these terminations. As for Plaintiffs Barquin and Telsie, they were each terminated due to poor attitudes affecting their job performance. Defendant attempted to counsel them but concluded they would be unable to perform their jobs with an acceptable attitude and agreed it best for them to leave.

As to Count II, Plaintiffs simply did not have a business relationship with Defendant's customers. Plaintiffs were Defendant's employees, serving Defendant's customers, no more no less. It was Defendant who had a business relationship with its customers. As a result of that

business relationship Defendant was not a stranger or third party with respect to its customers and therefore can not have interfered with Plaintiffs relationship with those customers. Additionally, all actions taken by Defendant were reasonable and in furtherance of its financial interests.

**DATED THIS 12th** day of July, 2013.

Respectfully submitted,

**LAW OFFICES OF DONALD J. JARET, P.A.**
*Counsel for Defendant*
2790 La Bella Ct..
Henderson, NV. 89052
Tel: (305) 740-3383
Fax: (305) 390-8728

BY: s/ DONALD JARET
Donald J. Jaret, Esq.
Florida Bar No. 296163

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 12, 2013, I electronically filed the foregoing document with the Clerk using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

S/ Donald Jaret
DONALD J. JARET