UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-cv-24180-JLK

MARIA BARQUIN;
NATASHA WATSON;
LUCIANA LOCOBARA;
JASMINE TELSIE; and
NATALIA PENA-MONSIEVHAN

   Plaintiffs,

v.

MONTY'S SUNSET, L.L.C.,

   Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court on Defendant Monty's Sunset, L.L.C.'s Motion for Summary Judgment (D.E. 50), filed July 12, 2013. The Court is fully briefed on the matter.[1] As indicated at the Pretrial Conference, the Court finds the Motion should be granted.

## I. BACKGROUND

This is an action arising under the Fair Labor Standards Act of 1938 ("the FLSA"), 29 U.S.C. § 201 *et seq.* The Court has jurisdiction to hear this case under 28 U.S.C. §1331 (federal question). Neither party contests venue or personal jurisdiction

---

[1] Plaintiffs filed a Response in Opposition on July 31, 2013 (D.E. 55). Defendant filed a Reply on August 6, 2013 (D.E. 57). The Court heard oral argument on the issue at the Pretrial Conference on September 6, 2013 (D.E. 62).

and the Court finds both are proper. This case was removed from state court on November 23, 2013. (D.E. 1). The Parties agree Plaintiffs were once employees of Defendant at Defendant's Monty's restaurant in Miami Beach, FL. The Parties also agree Defendant is an enterprise covered by the FLSA. (D.E. 29 ¶2, 6).

Count I alleges retaliatory firing in violation of 29 U.S.C. §215(a)(3). (Am. Compl. D.E. 10 ¶14).[2] Plaintiffs allege they were fired for asserting their rights to minimum wage and overtime compensation pursuant to FLSA. Plaintiffs do not allege that Defendant failed to pay them minimum wage or overtime compensation. On this Count, Defendant moves for summary judgment asserting Plaintiffs were not engaged in a FLSA protected activity because i) Plaintiffs never asserted FLSA violations to management and Plaintiffs' grievances were neither reasonable nor in good faith and ii) there is no causal connection between Plaintiff's activity and their termination. (D.E. 50 at 9-15). At all times material hereto, the federal minimum wage was $7.25 per hour. 29 U.S.C. §206(a)

Count II of the Complaint pleads that Defendant interfered with Plaintiffs' business relationship with Defendant's customers. (Am Compl. ¶ 17 (mislabeled ¶13)). Plaintiffs allege Defendant did not allow patrons of the restaurant to leave tips above the 18% automatic service charge, resulting in damage to Plaintiffs. (*Id.*). Defendant moves for summary judgment on Count II asserting that Plaintiffs did not have a

---

[2] The Amended Complaint is docketed as D.E. 25. However, D.E. 25 is incomplete, showing only pages 1, 2, and 5 of the Amended Complaint. D.E. 10 is the Motion to Amend the Complaint (granted in D.E. 24) and contains a complete copy of the Amended Complaint. Accordingly, all citations to the Amended Complaint are to the complete Amended Complaint found in D.E. 10 pages 4 through 9.

2

business relationship with the customers and, thus, no interference took place. (D.E. 50 at 17-19).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it is may determine the outcome under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen*, 121 F.3d at 646. If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must show specific facts to support that there is a genuine dispute. *Id.*

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255. However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50; *Matsushita*, 475 U.S. at 586. In reviewing the record evidence, the Court may not undertake the jury's function of weighing the evidence properly offered by the Parties. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010) ("[Plaintiff]'s evidence must be taken at face value,

and all justifiable inferences are to be drawn in his favor. Neither we nor the district court are to undertake credibility determinations or weigh the evidence.").

## III. DISCUSSION

### A. Count I: Retaliatory Firing in Violation of 29 U.S.C. §215(a)(3)

For Plaintiffs to prevail on Count I for retaliatory firing, they must prove:

(1) they each engaged in a protected activity under the FLSA;

(2) they each subsequently suffered adverse action by the employer; and

(3) a causal connection existed between the protected activity and the adverse action. *Wolf v. Coca-Cola*, 200 F.3d 1337, 1342-1343 (11th Cir. 2000).

The FLSA, 29 U.S.C. § 215(a)(3) forbids employers

> "to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the Act]... ."

#### i. FLSA Protected Activity

##### a. Notice to Employer -- Legal Standard

The Supreme Court has held § 215(a)(3) protects both oral and written complaints. *Kasten v. Saint Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1329 (2011). The Court found the FLSA requires employers receive fair notice that "a grievance has been lodged" and to the point where the employer "should reasonably understand the matter as part of its business concern." *Id.* at 1334. In analyzing the sufficiency of oral complaints, the Court held,

4

> "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 1335.

As a general principal, the FLSA must not be construed "in a narrow, grudging manner." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944); *See E.E.O.C. v. White and Son Enterprises*, 881 F.2d 1006, 1011 (11th Cir. 1989). Thus, it is not always necessary for an employee to mention the FLSA by name in order for the employee's complaint to garner FLSA protection. *See Johnson v. Advertiser Co.*, 778 F. Supp. 2d (M.D. Ala. 2011).

However, the complaint must make the employer aware of the FLSA grievance. General work grievances do not give rise to FLSA anti-retaliation actions. *See Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999) ("Not all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of §215(a)(3)"); *Valerio v. Putnam Assoc., Inc.*, 173 F.3d 35, 44 (1st Cir. 1999) ( "[t]here is a point at which an employee's concerns and comments are too generalized and informal to constitute 'complaints' that are 'filed' with an employer within the meaning of the [statute]....") (internal citation omitted); *Brown v. Triton Sec.*, 5005 WL 2708914, *5(Oct. 19 2005, E.D. Va. 2005) *aff'd*, 172 F. App'x 520 (4th Cir. 2006) (Employee's complaints regarding pay rate and job assignment merely expressed "dissatisfaction with the terms of his employment-at-will status. Such complaints are not protected activity." Claim to Dept of Labor of unpaid wages is protected.).

5

Thus, the question as to the first prong of a retaliatory firing cause of action is: Were Plaintiffs' complaints sufficient, in both content and context, to put Defendant on notice that FLSA protection was being invoked?

### b. Notice to Employer -- Analysis

Plaintiffs argue their complaints were protected activity. Defendant argues the complaints were nothing more than general workplace grievances.

Plaintiffs Telsie, Locabara, Barquin, and Watson's affidavits filed in opposition to the Motion for Summary Judgment characterize the complaints as concerning confusion in the method of compensation (tips versus hourly wage) and high credit card fees. (D.E. 55-2 ¶9, 10; D.E. 55-3 ¶6; D.E. 55-4 ¶9, 10; D.E. 55-6 ¶6). The only affidavit which asserts a complaint for being paid less than minimum wage is that of Plaintiff Pena-Monsievhan. (D.E. 55-5 ¶7). No affidavit asserts complaints for failure to receive overtime pay.

Plaintiffs' Interrogatory Responses are devoid of any allegation of complaints for violations of minimum wage or overtime laws. Plaintiff Barquin only asserts she complained about high credit card fees and high tip outs. (D.E. 50-2). Plaintiff Locobara only states she complained about high credit card fees. (Id.). Plaintiffs Watson and Telsie assert they complained about high credit card fees and high tip-outs along with complaints about compensation. Plaintiff Pena-Monsievhan only describes complaints for being improperly paid and sexual harassment.

The complaints Plaintiffs Watson, Telsie and Pena-Monsievich state they made regarding their method of compensation ("the manner in which I was paid," "the manner

6

in which I was compensated," and "being improperly paid") are too vague to constitute protected activity. Are these complaints that Plaintiffs (i) were not making enough money? (ii) would rather be paid an hourly wage than a percentage of sales? (iii) would rather be paid a salary than a percentage of sales? (iv) would rather be paid a greater percentage of their sales? (v) would prefer to have the deductions from their net sales reduced? (vi) would rather have a higher guaranteed wage? (vii) were not paid the guaranteed wage? (viii) believe a mathematical error or miscalculation occurred in the calculation of their pay? (ix) some law other than the FLSA controls their pay and has been violated?

Taken as a whole, Plaintiffs' complaints fail to contain the necessary substance or specificity to constitute protected activity under the FLSA. Plaintiffs did not indicate that they intended to seek formal redress to remedy any alleged wrongful activity. Plaintiffs never assert that they complained of overtime violations. Only once in discovery did a Plaintiff allege a complaint had been made for failure to receive minimum wage. Notably, Plaintiff Pena-Monsievch only claims she lodged that complaint in her affidavit, not in her response to interrogatories.

Taken in context, no reasonable juror could find that these complaints would put a reasonable employer on notice about claims of FLSA violations. Defendant provided Plaintiffs information of Plaintiffs' FLSA rights. It is undisputed that a FLSA poster was displayed in the restaurant's kitchen where Plaintiffs' schedules were posted. The poster informed Plaintiffs of the federal minimum wage of $7.25 per hour. Each Plaintiff signed a "Receipt and Acknowledgment of Employee Handbook"

7

acknowledging that they received and will read the Employee Handbook. (D.E. 50-4). As such, each Plaintiff is held to the knowledge contained therein. The Handbook twice states, "All front of the house employees are guaranteed $11.51 per hour, for each hour worked, regardless of hour's worked, after your payouts to support staff (5.0% of your net sales), credit card deductions (2.5% of your credit card sales), but **before** deductions for taxes." (D.E. 5-5 at 6, 19) (emphasis in original). The Employee Handbook twice states, "Overtime is paid for time you work over 40 hours in a pay week." (D.E. 50-5 at 6, 19)

It is undisputed that only Plaintiffs Barquin and Watson worked overtime. Because no other employee worked overtime, no reasonable employer would be on notice for any failure to pay overtime wages to any Plaintiff other than Barquin and Watson. As to Plaintiffs Barquin and Watson, they only worked minimal overtime during two weeks for Plaintiff Barquin and one week for Plaintiff Watson. (D.E. 50-9; *See also* Oral Arg. Sept. 6, 2013). However, Plaintiff Barquin in her Response to Interrogatories says she only complained about high credit card fees and high tip-outs and Plaintiff Watson's Response to Interrogatories says she complained about high credit card fees and her method of compensation (D.E. 50-2). In Plaintiffs' Barquin and Watson Affidavits, Plaintiffs say they complained about credit card fees and that their paystubs reflected tips but not hourly wages (D.E. 55-3). Neither Plaintiff Barquin nor Plaintiff Watson, the only two Plaintiffs who could logically take issue with overtime pay, asserts complaints lodged to Defendant for failure to pay overtime wages.

8

Under these circumstances, a reasonable employer would not understand an employee to be asserting FLSA violations when complaints are lodged about credit card fees, tip outs, or manner of compensation. Verbally informing one's employer that it is one's opinion the credit card fees or tip outs are too high is by no means the lodging or filing of a grievance under the FLSA. In an environment where each employee is guaranteed $11.51 per hour, complaints about method of compensation would not reasonably be taken to be allegations of minimum wage violations. When only two employees in a group worked overtime and the handbook guarantees overtime pay, complaints about method of compensation would also not reasonably be taken to be claims of overtime violations.

Thus, even crediting the complaints Plaintiffs contend they made, there is no genuine issue of material fact as to the nature of their complaints. Given the content and context of Plaintiffs' complaint, no reasonable juror could find that Plaintiffs engaged in a FLSA-protected activity.

### c. Good Faith and Reasonableness -- Legal Standard

Even if an employer has the requisite notice, a complaint will only trigger FLSA protection if the employee lodges his complaint i) in good faith and ii) with an objectively reasonable belief that the employer's conduct is unlawful. *Little v United Techs. Carrier Transicold Div.*, 103 F. 3d 956, 960 (11th Cir. 1997) (decided under Title VII anti-retaliation provision); *Perez v Brands Mart Ser'v Corp.*, 2011 WL 3236022 (S.D. Fla. July 28, 2011) (decided under FLSA anti-retaliation provision); *Burnette v.*

9

*Northside Hosp.*, 342 F. Supp 2d 1128, 1133 (N.D. Ga. 2004) (applying Title VII analysis to FLSA).

### d. Good Faith and Reasonableness -- Analysis

Assuming that Plaintiffs brought their complaints in subjective good faith, the record before the Court shows no evidence that the complaints were objectively reasonable. As previously discussed, Plaintiffs knew the minimum wage was $7.25 per hour, knew they were guaranteed $11.51per hour, and knew they were guaranteed to be paid for overtime.

It is not objectively reasonable for employees who knew they were guaranteed $4.26 per hour above the minimum wage to complain about not receiving the minimum wage. It is not objectively reasonable for employees who did not work overtime to complain of payment for overtime work. Thus, even if Plaintiffs Locobara, Telsi, and Pena-Monsievhan had complained of overtime violations, which the Court notes they have not contended in discovery, such complaints would be objectively unreasonable given that they did not work overtime. Plaintiffs Barquin and Watson did work overtime, but they do not contend that they ever complained about non-payment of overtime wages. The Court notes Plaintiffs never pleaded that they were not actually paid the minimum wage or that they were not compensated for overtime. In light of these facts, Plaintiffs did not have an objective reasonable belief that FLSA violations were taking place.

### ii. Adverse Employment Action and Causation

There is no doubt Plaintiff suffered adverse action by Defendant in that Plaintiffs were terminated. However, based on the Court's finding that Plaintiffs did not engage in a protected activity, it is unnecessary to consider the third prong of a retaliatory firing cause of action, i.e. whether a causal connection existed between the protected activity and the adverse action. There can be no causal connection between a protected activity and an adverse employment action unless the employer had knowledge of the protected activity at the time of the adverse action. Here, the Court finds no evidence to suggest any protected activity and, therefore, it cannot be said that Defendant had knowledge of any protected activity. Hence, any factual dispute over Defendant's reasons or motivations for terminating Plaintiffs does not create a genuine issue of material fact precluding the grant of summary judgment.

## B. Count II: Interference with Plaintiffs' Business Relationships

### i. Legal Standard

Under Florida law, for Plaintiffs to prevail on Count II for interference with business relationships, they must show:

(i) the existence of a business relationship,

(ii) knowledge of the relationship on the part of defendant,

(iii) an intentional and unjustified interference with that relationship by defendant, and

(iv) damage as a result of the breach of relationship.

*Sirpal v Univ. of Miami*, 509 Fed. Appx. 924, 931 (11th Cir. 2013), citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). A protected business relationship need not be evidenced by a formal contract, but the relationship must be "evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen*, 647 So. 2d at 815.

### ii. Analysis

The foundation of interference with a business relationship is the existence of an actual business relationship. Plaintiffs characterize the relationship as "that between the customers and the Plaintiffs to the extent that it involves the payment of tips." (D.E. 55 at 12). The Court finds Plaintiffs simply had no business relationship with Defendant's customers. The guests of the restaurant were not Plaintiffs' customers, they were Defendant's customers. Defendant owned and operated its restaurant to serve its customers. Defendant hired Plaintiffs to serve those customers subject to Defendant's direction and control. The Employee Handbook, of which each Plaintiff acknowledged receipt, makes clear that the restaurant operates to serve Defendant's customers and directs its employees conduct in order to best serve those patrons. (*See* D.E. 50-5 at 1, "Serving our guests is our most important goal.") Plaintiffs, by doing their jobs, did not have a business relationship with any customer. Having no business relationship with Defendant's customers, Plaintiffs cannot establish their claim. Thus, there is no genuine issue of material fact in Count II.

## IV. CONCLUSION

Accordingly, after a careful review of the record and the Court otherwise being advised in the premises, it is

**ORDERED, ADJUDGED and DECREED** that Defendants' Motion for Summary Judgment **(D.E. #50)** be, and the same is, hereby **GRANTED**. The Court retains jurisdiction to fix fees and costs, if any.

**DONE and ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 2nd day of October, 2013.

*[signature]*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

Cc: All counsel of record